case. This next case this morning is 18 10 20 United States v. Smith. Easier name. That's an easier name to pronounce. Mr. Ritchie and Mr. Bartlett, you're back in the saddle. As Judge Connor in my practice down in the San Luis Valley say, you're still under oath. All right. Good morning, Your Honor's counsel. John RCC, Assistant Federal Defender, appearing on behalf of the appellants. You're going to have to slow down a little bit. I can't listen that fast. All right. Appearing on behalf of the appellants, Joseph Smith. Thank you. Your Honor, I'd like to start today with the third and fourth prongs of plain error review, because that's where the primary dispute here is. And in this type of sentencing error case, those two prongs are inextricably intertwined. We started from the wrong spot. Isn't that your point? Correct. That's the error. Yeah. And when there is that type of obvious error, the third and fourth prongs are presumptively satisfied. There are really only two ways in which the government can try to rebut that presumption. And the first, it doesn't even attempt to show here, so I'm not going to dwell on that. But there are cases where the district court considers multiple alternative versions of the guidelines and says, under either one, I'd impose the same sentence. That didn't happen here. So we take that off. The other way that the government can try to rebut the presumption is to show that the district court imposed a sentence completely irrespective of the guidelines. But the record doesn't support that proposition. The government's suggestion that that's what the court did is belied by the fact that the district court varied downwards, but it varied downwards from something. And when you vary downwards, you're varying from the guidelines. The only range that the court could have varied downwards from is the indisputably incorrect range that it had previously articulated. So I think there's really nothing in the record to support the proposition that the sentence was not connected to the guidelines in some way. Did anybody object to this when it was happening? No, no one objected. We're on a plain error review here. Mr. Smith meets his burden by showing that a plain error occurred. And it then transfers to the government, right, to rebut that presumption. And so I think that the only way the government can do that again is to show that the guidelines didn't impact the sentence. But the guidelines, their very reason for their existence, of course, is to impact sentencing. And so when you vary downwards, Sabina Numana, Alina Martinez are clear that the guidelines still form the benchmark in the starting place. Do we need to know what was in Judge Krieger's head? I mean, is this just a case of misspeak? No, and I think that that's why. Why isn't this a case? She obviously knew the guideline, correct? At one point, she referenced the correct number. She referenced a 210 to 262 range about 30 pages earlier in the transcript. She never met 210 to 242 or whatever the correct number was. I don't think that 210 to 240 was never articulated by the court directly. It is in the pre-sentence report in paragraph 98. And she had that before her, correct? Sure. And she also had before her at least six alternative ranges that were being bandied about and argued over. I don't think it makes any difference. I don't think, A, we can't know, of course, what was in the district court's head. All we know is what she said on the record. And what she said, the government agrees, was incorrect. Didn't both the government and probation suggest 210 months? No. Actually, probation had suggested 210 months. And that's what she said, 210. 210. Probation did, but the government had argued for 240 months. The district court misspoke when it said that it thought that the government had argued for 210. So that was another error. And there's a footnote in my opening brief with the record cite to that error. I think that there's a couple reasons, right? We can only take the district court at its word. And there were, when there were all these numbers swirling around, and that's why I think the government's concession, I guess, is well-founded on that point. The only time the court announced the range that it said was applicable in this case, it was indisputably incorrect. And so whether or not the court may have had before it the correct range and other things, whether the court misread the sentencing table or misread its notes or misread the bench memo, we don't know and it doesn't matter because the impact of the error is the same. I also just want to briefly address the government's contention, its alternative contention, that raised in the 28J letter that the district court somehow was comparing sentencing disparities between the co-defendant, Ms. Groff's, state sentence and federal sentence and Mr. Smith's federal sentence. There is really nothing in the record to suggest that that is the case. And if you read the paragraphs, right, the portion quoted in the 28J letter at page 106 of Volume 3 doesn't actually say that. And if you read the paragraphs before and after that, it's clear that the court is talking about the federal sentence. That makes sense, right, because the co-defendant was charged with the exact same federal crime as Mr. Smith. And the district court throughout the sentencing proceedings at pages 78 to 83 and 103 to 106, I think are particularly apt in this point, repeatedly drew a connection between the difference of the conduct underlying their federal cases and that Mr. Smith she viewed as more culpable, but more culpable in the context only of the behavior and the conduct underlying these two federal cases. The court never said that it was weighing Ms. Groff's federal and state sentences and it would have been really odd for the court to make that comparison given that Mr. Smith hadn't even been sentenced in state court at the time of his federal sentencing. The court repeatedly throughout the sentencing hearing also focused, this is the federal case, the state case is different. It discounted the psychosexual evaluation that had been done of Mr. Smith as not really informing its decision because it didn't respond or anticipate or sort of look at the conduct of transportation, of child pornography that underlay this particular case. So what was the federal disparity? The federal disparity, the co-defendant got nine years on her federal case and Mr. Smith got 15 years. And so my point on that is that sure, there is a disparity, the court considered this disparity and it also considered, it referred to the defense argument of disparity, which was again centered on the federal cases. My point in all of this is that the impact of that disparity and of the court's decision to vary downwards from the guideline range to 180 months, there's a low end here, right? That the court said Mr. Smith is more culpable than the co-defendant. But there's a huge space between 15 and nine. And so that's why I think that we can't in any way take anything meaningful away from the fact that the court went down to 15 and that it wouldn't necessarily go down further if it applied the correct guideline range, which again was over two years less than the one that the court announced. And finally... It may not have been Judge Krieger's best day in terms of kind of having everything crisply stated. I mean, judges are entitled to some tolerance. Maybe the coffee wasn't good that morning or whatever. But didn't she at bottom at least correctly state that she had considered the guidelines and she had considered the probation report, which had all the correct ranges in it, and then make a judgment based upon a consideration of the argument and the probation report and the guidelines? Yes. And therein lies the problem, correct? I don't think there is a problem here. And the reason is that, sure... Well, if there isn't a problem, what are we doing here? I mean, I thought you guys just brought error to it. Oh, there is a problem with respect to... I'm sorry, I thought you were suggesting that there's no problem. Mr. Smith should not be raising a complaint. I think, sure, judges are entitled, of course, as defense counsel, right, that we're on plain error. Do people miss things, Justice Sotomayor? We misstate things from time to time. Sure. But this is a pretty big thing to misstate or to get... Well, to explain to us why it's such a big thing to misstate. Because it's the guideline range, right? It's the ultimate resultant guideline range. But that's verbal. And the correct range is in the report that she utilized and that was in front of her. Sure. And there were at least six ranges, right, that were in that report. And I think that typically if we're looking at oral versus written sentences, the oral disposition controls, right, as a general matter of law. And I think typically we're going to take the word of the court over the word of the probation officer. And so I think at the end of the day, right, this is the benchmark, right? This is the thing that she varies downward from. And it's vital to get right. It's just one of those things that if we're in the zone of speculation, right, as this court said in Henry, right, it's far better to know on remand than to guess on appeal when it comes to the loss of personal liberty. And I think that ultimately... What's a relief you ask? To send it for us to send it back to her and to have her resentence or... Yeah. The appropriate remedy is a resentencing. Savvy Numana contemplates that. And the reason why... Let me just ask you this. If we sent it back and she then read everything absolutely correctly, said exactly what she said, I have the probation report in front of me, I have the government's recommendation in front of me, I have everything in front of me, the guideline considerations, and then imposes the same identical sentence that she did before, is there error? Not necessarily. I don't want to presume obviously what else happens in the hearing, but to Your Honor's point, I mean, certainly Mr. Smith plausibly could receive the same sentence on remand, but there's also a reasonable probability that when the court is starting from a correct range that is over two years lower than the one it did the first time, that there's a reasonable probability that he would receive a lower sentence as well. I'd reserve the rest of my time if the Court has no further questions. Hello again, counsel. May it please the Court. The Supreme Court's decision in 2016 in Molina-Martinez tells us that when a defendant is sentenced under an incorrect guideline range, the error itself can be sufficient to show a reasonable probability of a different outcome. There's not a reasonable probability in this case that Smith's sentence would have been lower. No, why not? A reasonable probability, Your Honor, is more than a mere possibility. In this case... We don't have any idea what she would sentence to if she started from the right spot. We don't have a clue. I think we do have a clue, Your Honor. Tell me how we have it. You're reversing the normal presumption. That's troublesome. Normal presumption is when the court starts with the wrong guideline, it's remanded because it would be simply cured, easily cured, no big expense involved. And I don't understand how we can say, well, she probably wouldn't do anything differently. Because we can look at the totality of the record. This Court has said in Archuleta and it's had the El Numana case and others that a fortuitous comment can make it clear that the error in applying the guidelines didn't adversely affect the ultimate sentence. And I think in this case we have more than one or two fortuitous comments. We have a Court that was very much concerned about disparity between this defendant and the co-defendant. And, in fact, right down to the final sentencing statement, the Court was very clear that Mr. Smith's behavior, in my view, is greater in degree only in the aspect he was willing to forward the picture across the Internet, making it publicly potentially available to others. I believe a downward variance in the guideline range is appropriate and the sentence needs to be adjusted in order to avoid unwarranted disparity between his sentence and Ms. Groff's sentence. From the guideline range. But the disparity makes the lynchpin his co-defendant's sentence. That was the driver of the ultimate number that was chosen. The Court went through the 3553A factors, looked at the guidelines. I believe she misspoke, but as has been pointed out, we can't mind-read here if she said what she said. But at the point of determining how much of a variance below the range, and the variance here was below either the correct range or the incorrect range, at that point in making that determination was I'm concerned about the disparity with this co-defendant. And so that's the driver. And I think that gives us an indication of how the number was chosen. And what is the disparity? I'm sorry? What is the disparity? His sentence ended up being about 15 years. Again, there was a long discussion. Well, what was the disparity between the co-defendant and this defendant? In terms of real time, it would play out of being 15 for this defendant and 13 for the co-defendant. Okay. And the Court was very interested in that, that possible disparity. The defense argued disparity both before and during the sentence. So this is something the defense brought to the table as a reason to do a variance. Judge Krieger asked the status of Smith's state case, and the prosecutor said up to 16 years was possible, but the DEA was leaning towards a halfway house, so effectively a zero. And the prosecution then said that Smith's co-defendant, Groff, was subsequently given an additional eight-year sentence consecutive in state court, so she's looking at 17 years, although that eight years will be calculated differently federally because there's more credit for time served and good time. And as we indicated in our 28-J, it's essentially day for day. It's 15 days of good time out of every 30. So an eight-year state sentence boils down to four. And so what we're looking at here is a total of 13 years. Yeah, but the judge didn't know that at the time, right? He hadn't been sentenced in state court, right? She hadn't been sentenced yet, but the – let me back up. Smith had not been sentenced in state court. Groff had been sentenced in state court, and this is what the prosecutor was laying before Judge Krieger. Now, we don't have those documents in the record. I can provide them through a 28-J because they're public court documents, but that's, in fact, the sentence that the prosecutor was representing is, in fact, what the co-defendant got. What did Smith get sentenced to in state court? He got his halfway house placement. He got what? Halfway house placement. Sorry, I'm getting over a cold. And so the net effect is 15 and 13. Was that because of the federal sentence? I'm sorry? Was that because he already had a federal sentence? I don't know what the state DA's reasoning in that, beyond what the prosecutor said before Judge Krieger, just that the DA seemed to be leaning towards halfway house in light of the federal sentence. And that's going to be volume three, page 92. I mean, we can all agree the record is not abundantly clear on all of its particulars here, but I think the court was very interested in the disparities, spent some time talking about them. I'm sorry. Even if we spot you that and say, well, the court was interested in making sure there was disparity, it still didn't have to be two years. I mean, sort of where Judge Kelly is on this is, how do we go about getting into her head and knowing precisely what sentence she would impose if she started from the correct square in arriving at the ultimate conclusion? I think, again, as Judge Kelly pointed out, the law says there's sort of a presumption here. If you start from the wrong starting point, almost invariably, it's going to be a problem all the way down the line. Right. I think in this case... We call it compounding error. I think in this case, though, we see there was something outside the guideline calculation, the potential disparity with the co-defendant that was very much on the court's... Maybe there wasn't. I mean... The court said as much. And, in fact, even in the statement of reasons on the sentencing, there's two boxes checked for the reason for the downward variance. One was for time served. The government opposed that, but it was to make sure that she got time served credit. And the other one is to avoid unwarranted sentencing disparities among defendants. There's only one other defendant here. All right. So she's indicating this is why I'm doing this, because of the sentencing disparity. Now, would she choose precisely this number? I guess we can't be 100% sure of that. But that goes back to your question. If the court chooses to remand, as long as we're clear that, you know, the court has the entire range before itself available, I have little doubt that Judge Krieger is going to come back here, because I think this is the disparity, the possibility of the disparity, was the driver of the number that was chosen. We can see that the guidelines were not of a particular concern to her, given how far down she dropped down below the guideline as announced or the guideline that everyone in the courtroom understood we were working under, the one that probation had talked about, the one the government endorsed, the one the defense had endorsed. So it's really a judgment call with this court. Is there enough here? We think there is, but there are no further questions. Thank you much. Thank you. Thank you, Your Honors. Just a couple brief points. The disparity, government said 13 years. It gets to that by adding the federal and state sentences. And I just want to repeat, I think there is no record support. It is post hoc speculation completely unmoored from the record in this case. The government below did mention she got nine years in state custody. It would be calculated differently. They never went into how state time is calculated. That was never put before Judge Krieger. Judge Krieger never took judicial notice of the state court sentence or the state court records, which you would expect if she was taking that into consideration. And there's lots of variables, right? There's no guarantee she's going to earn all that good time. It's completely speculative now and would have been then as well. Mr. Smith got, to answer Your Honor's question, Mr. Smith ultimately got five years community corrections in the state system, consecutive to his federal time. I thought he said he got halfway house. Community corrections is effectively a halfway house, I believe, in the state system. But I think that could be turned into a sentence of incarceration. I'm not an expert in state procedure. Ultimately, it's not really particularly relevant because none of this was before Judge Krieger when she was sentencing Mr. Smith. The second point is that the government mentioned Archuleta. As I point out in my reply brief, right, there was far more that Judge Kane there had said in the record about that the guideline error wouldn't have made a difference to his sentencing than is present here. And this Court still remanded in Archuleta because it was still an indication that the guidelines impacted the sentence, just as Judge Krieger varied downward from the guidelines here. Ultimately, I think this is a very simple case. The Court announced an incorrect guideline range. It varied downward from that. Under Savino-Nemana, Polina-Martinez, Rosales-Morales, that triggers a rebuttable presumption that the third and fourth prongs of plain error review are met. The government hasn't rebutted that presumption, and a remand for resentencing is necessary. So Mr. Smith would respectfully request a remand for resentencing. And if the Court has no further questions, I'll yield the balance of my time. Thank you, counsel. Counselor excused. Case is submitted. Court is going to take a customary recess and we'll be back in about seven to ten minutes.